## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| JIMMY WAYNE MARLOWE *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 1:17-CV-00309-ACA |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................2

II.   RESPONSE TO DEFENDANT'S ALLEGED UNDISPUTED FACTS ...........................3

III.  ADDITIONAL UNDISPUTED FACTS...............................................................5

IV.   ADDITIONAL DISPUTED FACTS ...................................................................6

V.    SUMMARY JUDGMENT STANDARD OF REVIEW .......................................8

VI.   ARGUMENT .................................................................................................10

  A.  Dr. Cumagun's Treatment of Veteran Marlowe.....................................................11

  B.  Dr. Cumagun did not follow the standard of care for the treatment of a diabetic foot when examining Veteran Marlowe. .....................................................13

    i.    The testimony of Dr. Taylor, a vascular surgeon, is not admissible as evidence of the standard of care for an internist. ...................................................15

    ii.   Plaintiffs have presented sufficient evidence from a similarly situated healthcare provider to create a genuine dispute of fact as to the standard of care...15

    iii.  Veteran Marlowe's treatment by other physicians subsequent to Dr. Cumagun does not overcome Dr. McLane's expert testimony. ...................................................17

  C.  Dr. Cumagun's failure to adhere to the standard of care for the treatment of a diabetic foot when treating Veteran Marlowe probably caused Veteran Marlowe to suffer the amputation of both of his legs. .................................................18

VII.  CONCLUSION ..............................................................................................22

## MEMORANDUM OF LAW

Plaintiffs, Jimmy Wayne Marlowe and Virginia Marlowe, by and through their undersigned counsel submit this Brief in response and opposition to Defendant's Motion for Summary Judgment [Doc. 30].

Genuine issues of material fact exist as to whether Dr. Cumagun, a physician employed by the United States Department of Veterans Affairs, failed to follow the standard of care when treating Veteran Jimmy Wayne Marlowe and whether that failure caused injury to Veteran Marlowe resulting in above the knee amputations of both of Veteran Marlowe's legs. Because Plaintiffs have presented expert testimony that Defendant failed to follow the standard of care and that Defendant's failure caused Veteran Marlowe's injury, Plaintiffs have met their burden under the Alabama Medical Liability Act and this case must proceed to trial on the merits. This Court should deny Defendant's motion for summary judgment.

## I.     INTRODUCTION

Dr. Cumagun, a VA employed internal medicine physician, acting for Defendant the United States failed to follow the standard of care in examining the feet of Plaintiff, Jimmy Wayne Marlow, a United States Veteran, during a clinic visit in March of 2014.  Defendant's breach of the standard of care resulted in Veteran Marlowe losing both his legs in a double, above the knee amputation.

Defendant relies on inadmissible testimony from a non-similarly situated physician and out of context statements by Plaintiff's expert in moving this Court for summary judgment.  Plaintiff has presented ample expert evidence showing Defendant failed to follow the standard of care on the March 2014 exam of Veteran Marlowe.  Additionally, Plaintiffs have presented testimony from multiple physicians supporting Plaintiffs' position that Dr. Cumagun's failure to follow the standard of care probably caused Veteran Marlowe to suffer double, above the knee, leg amputations.

This Court must draw all reasonable inferences in favor of Veteran and Mrs. Marlowe.  Genuine issues of material fact exist as to the elements of the prima facie case.  Defendant cannot establish it is entitled to judgment as a matter of law. Because the evidence when viewed in the light most favorable to Plaintiffs could lead a reasonable jury to find for Plaintiffs, the Court must deny Defendant's motion and proceed to trial on the merits.

## II.   RESPONSE TO DEFENDANT'S ALLEGED UNDISPUTED FACTS

1-5.   Agreed.

6.   Plaintiffs acknowledge that Dr. Cumagun is a primary care physician employed by the VA.  Most importantly, though, Dr. Cumagun is a board certified Internist, specializing in Internal Medicine.  (Doc. 34-5, Exhibit 5, Cumagun Depo. 14:2-14).

7-9.    Agreed.

10.    Dr. Cumagun described Veteran Marlowe's feet in accordance with the

diabetic foot exam as "abnormal" containing "Erythematous skin lesion[.]"

(Doc. 30-3, Sealed Exhibit, Cumagun Treatment Note of March 2014

previously filed by Defendant).

11.    During the diabetic foot exam, Dr. Cumagun noted Veteran Marlowe's pulse

exam as "abnormal" with "Decrease both dorsalis pedal[.]"  (Doc. 30-3,

Sealed Exhibit, Cumagun Treatment Note of March 2014 previously filed by

Defendant).

12-24.  Agreed

25.    Dr. Trujillo, a specialist in emergency medicine, not internal medicine, noted

diminished value on the DP/PT pulse, the record is unclear as to whether Dr.

Trujillo checked both pulses on both feet.  (Doc. 30-9, Sealed Exhibit,

Treatment notes of Coosa Valley ER, previously filed by Defendant).

26-30.  Agreed.

31.    Veteran Marlowe maintains he experienced continuous skin lesions from his

March visit at the VA to his amputation in late July.  (Doc. 34-4, Exhibit 4,

Marlowe Depo. 65:9-12, 67:2-4).  Veteran Marlowe's podiatrist records are

maintained in electronic form which is easy to autofill to

incorrect/incomplete information.  (See Doc 30-9, Sealed Exhibit, Treatment

notes of Coosa Valley ER, previously filed by Defendant).  (Doc. 30-20,

McLane Depo. 111:14-17, previously filed by Defendant (speaking to
electronic record inaccuracy)).

32-34. Agreed.

35. Veteran Marlowe states he spoke with Dr. Pinson about his feet on the June 2,
2014 appointment. (Doc. 34-4, Exhibit 4, Marlowe Depo. 53:10-14).

36-44. Agreed.

45. Veteran Marlowe testified that Dr. Henderson "walked in the door, propped
up on the side of the door [five feet away and said that's ringworm]." (Doc.
34-4, Exhibit 4, Marlowe Depo. 67:7-10).

46. Agreed.

47. Dr. Henderson did not check the pulse in Veteran Marlowe's feet.  (Doc. 30-
5, Henderson Depo. 30:12-13, previously filed by Defendant).

48-60. Agreed.

## III.   ADDITIONAL UNDISPUTED FACTS

1. Dr. Cumagun is a board certified internist or internal medicine specialist.
(Doc. 34-5, Exhibit 5, Cumagun Depo. 14:2-14, 16:21-23, 17:1-3.)

2. Dr. McLane is similarly situated to Dr. Cumagun as a board certified
internal medicine specialist.  (Doc. 30-20, McLane Depo. 6:7-22, 135:3-4,
previously filed by Defendant) (Doc. 34-2, Exhibit 2, McLane CV).

3.     Dr. Taylor is a board certified vascular surgeon.  He is not a board certified internal medicine specialist. (Doc. 30-19, Taylor Depo. 37:17-20, previously filed by Defendant) (Doc. 34-1, Exhibit 1, Taylor CV).

4.     Diabetic patients are at higher risk of vascular or blood flow problems. (Doc. 34-5, Exhibit 5, Cumagun Depo. 30:13-23).

5.     There are two pulses in a foot, a pulse felt on top of the foot and a pulse felt behind the ankle. There is a third pulse felt behind the knee.  (Doc. 30-20, McLane Depo. 21:25, 22:1-12, previously filed by Defendant).

6.     A diminished pedal pulse can be a sign of poor circulation.  (Doc. 34-5, Exhibit 5, Cumagun Depo. 82:16-19).

7.     Dr. Cumagun, acting as an agent of the United States only checked Veteran Marlowe's pedal pulse at the top of his feet.  (Doc. 34-5, Exhibit 5, Cumagun Depo. 68:13-23, 14:69:1).

8.     Clinic visits to the VA for blood thinners do not always include visiting with the doctor.  (Doc. 34-4, Exhibit 4, Marlowe Depo. 48:18-19-23).

## IV.   ADDITIONAL DISPUTED FACTS

1.     Dr. Cumagun had difficulty finding Veteran Marlowe's pedal pulse. (Doc. 34-4, Exhibit 4, Marlowe Depo. 13:14-15).

2.     Dr. Cumagun told Veteran Marlowe that his pedal pulse was weak. (Doc. 34-4, Exhibit 4, Marlowe Depo. 13:14-15).

6

3.     The standard of care for an internist examining a diabetic patient with foot lesions and diminished pedal pulses requires a vascular workup, either by Doppler or by referral to a vascular specialist. (Doc. 30-20, McLane Depo. 21:2-7, 26:17-21, 36:14-17, 48:14-17, 72:21-25, 73:1-5, 77:13-17, previously filed by Defendant).

4.     Dr. Cumagun failed to follow the standard of care for treatment of a diabetic foot. (Doc. 30-20, McLane Depo. 21:2-7, 26:17-21, 36:14-17, 48:14-17, 72:21-25, 73:1-5, 77:13-17, previously filed by Defendant).

5.     Dr. Cumagun failed to diagnose Veteran Marlowe's embolism.  (Doc. 30-19, Taylor Depo. 6:9:16, 7:3-4, previously filed by Defendant).

6.     The lesions on Veteran Marlowe's feet were caused by poor circulation/blood perfusion.  (Doc. 34-5, Exhibit 5, Cumagun Depo. 30:13-23) (Doc. 30-19, Taylor Depo. 5:17-20, 8:8-11, 67:12-17).

7.     The lesions on Veteran Marlowe's feet never healed from his March 14, 2014 visit with Dr. Cumagun.  (Doc. 34-4, Exhibit 4, Marlowe Depo. 67:2-4).

8.     Veteran Marlowe's feet could probably have been salvaged if the embolism had been diagnosed in March of 2014.  (Doc. 30-19, Taylor Depo. 21:9-10, previously filed by Defendant) (Doc. 34-3, Exhibit 3, McLane Expert Report) (Doc. 30-20, McLane Depo. 79:23-25, 80:1-25, 81:1-25, 82:1-10, 86:6-17, 106:5-8, previously filed by Defendant).

9.     Dr. Cumagun's failure to diagnose and failure to follow the standard of care probably caused Veteran Marlowe to contract gangrene and lose both legs to amputation. Doc. 30-19, Taylor Depo. 21:9-10, previously filed by Defendant) (Doc. 34-3, Exhibit 3, McLane Expert Report) (Doc. 30-20, McLane Depo. 79:23-25, 80:1-25, 81:1-25, 82:1-10, 86:6-17, 106:5-8, previously filed by Defendant).

10.     Veteran Marlowe's subsequent treating physicians are not similarly situated to Dr. Cumagun and cannot speak to the standard of care Dr. Cumagun should have applied. (Doc. 30-9, Sealed, Coosa Valley ER Notes) (Doc. 30-10, Sealed, Bowman Podiatry Notes) (Doc. 30-11, Sealed, Pinson Primary Care Notes) (Doc. 30-13, Sealed, Pinson Primary Care Notes) (Doc. 30-14, Sealed, Henderson Dermatology Notes) (Doc. 30-16, Sealed, Pinson Primary Care Notes) (Doc. 30-17, Sealed, Bourgeois Dermatology Notes) (all sealed subsequent treatment Notes previously filed by Defendant).

## V.     SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment must be denied if, after a review of the pleadings and discovery, a genuine dispute of material fact exists. Fed. R. Civ. P. 56(c). The Court must review the evidence in the light most favorable to Veteran and Mrs. Marlowe, the non-moving parties, and draw all reasonable inferences in their favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). As the movant, Defendant must prove to the court no genuine dispute of material fact exists, and it is entitled to judgment as a matter of law because

Plaintiffs have failed to present evidence in support of their prima facie case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Veteran and Mrs. Marlowe have presented sufficient evidence in support of each element of their prima facie case and genuine issues of material fact exist.

Plaintiffs have presented evidence of genuine disputes of material facts. A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Plaintiffs have submitted testimonial evidence disputing Defendant's facts on the main issues in the case, standard of care and causation. A reasonable trier of fact, when viewing the evidence in the light most favorable to Plaintiffs could determine Dr. Cumagun failed to follow the standard of care when treating Veteran Marlowe and caused Veteran Marlowe to suffer the amputation of both of his legs.

When considering evidence at summary judgment, the Court must draw all reasonable inferences – including questions of credibility and of the weight to be accorded to particular evidence – in favor of Plaintiffs. Masson v. New Yorker Magazine, Inc., 501 U.S. 496 (1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255(1986)); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 588 (1986). Accordingly, when experts in a case give disputing testimony as to a material fact, the dispute must not be resolved at summary judgment. See Fed. R. Civ. P. 56(a); In re Leopard, No. 2:13-CV-02251-RDP, 2014 WL 2740320, *1, *4 (N.D. Ala. June 17, 2014) (stating that competing expert reports create genuine

issues of material fact and should not be decided on summary judgment but should be decided by the fact finder). In this case, Plaintiffs' expert and Defendant have given competing testimony about the standard of care and the causal link between the failure to follow the standard of care and the amputation of Veteran Marlowe's legs. Because these disputes between the parties are about material facts of this case – whether Defendant followed the standard of care and whether that failure caused Mr. Marlowe's injury – summary judgment is not appropriate, and the matter must be allowed to go to on the merits.

Because a reasonable jury could find for Plaintiffs on the material disputes and because Plaintiffs have presented evidence in support of each element of their prima facie case, this Court must deny Defendants' motion for summary judgment.

## VI.   ARGUMENT

Plaintiffs bring this action against the United States under the Federal Tort Claims Act. A plaintiff must bring actions for injury against the United States under the FTCA to avoid issues of sovereign immunity. 28 U.S.C. § 1346(b). Though the actions are brought in a federal forum, FTCA claims are controlled by the substantive law of the state where the injury occurred.  28 U.S.C. § 1346(b)(1). Veteran Marlowe's action arose in Alabama and is therefore controlled by Alabama law. See Hanna v. Plumer, 380 U.S. 460, 465 (1965); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Looney v. Moore, 886 F.3d 1058, 1062 (11th Cir. 2018) (applying Alabama law in a medical malpractice case); Van Reed v.

<u>Corizon Health</u>, No. 2:15-cv-00793-RDP-JHE, 2018 WL 1023588, *1, *12 (N.D. Ala. Feb. 1, 2018) (applying Alabama law in a "negligent medical care" case).

Under Alabama law, claims for injury from medical treatment are controlled by the Alabama Medical Liability Act (ALMA). Ala. Code. § 6-5-480, et seq., Ala. Code § 6-5-540 et seq. The ALMA creates a duty to healthcare providers to follow an appropriate standard of care when treating patients. Ala. Code § 6-5-484. The standard of care is defined as "such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in like cases." Ala. Code § 6-5-542(2).

Dr. Cumagun failed to provide Veteran Marlowe care equal to what would have been provided by a similarly situated healthcare provider. Dr. Cumagun's failure to follow the appropriate standard of care caused Veteran Marlowe to suffer gangrene and ultimately the amputation of both of his legs.

## A.      **Dr. Cumagun's Treatment of Veteran Marlowe**

Dr. Cumagun is a board certified internist practicing internal medicine as a primary care physician at the Childersburg VA Community Based Outpatient Clinic. (Doc. 34-5, Exhibit 5, Cumagun Depo. 14:2-14, 16:21-23, 17:1-3).  On March 14, 2014, the VA employed Dr. Cumagun in its Childersburg Community Based Outpatient Clinic.  (Doc. 30-1, p.7 ¶ 5-6, undisputed facts).  Jimmie Marlowe is a former military paratrooper, now 84 years old who suffers from diabetes and takes blood thinners daily.  (Doc 30-1, p.6 ¶ 1-3, undisputed facts).

Veteran Marlowe utilized the VA clinic for monthly visits regarding his blood thinner medication – the coumadin clinic.  (Doc. 30-1, p.6 ¶ 3, undisputed facts). On most occasions, Veteran Marlowe would not see a doctor at the coumadin clinic. (Doc. 34-4, Exhibit 4, Marlowe Depo. 48:18-19-23). Dr. Cumagun treated Veteran Marlowe on March 14, 2014 during his regular coumadin clinic visit for complaints of lesions on his feet. (Doc. 30-1, p.7 ¶ 7, undisputed facts).

Dr. Cumagun had difficulty finding a pulse in Veteran Marlowe's feet. Veteran Marlowe recalls Dr. Cumagun "tried and tried to get a pulse on [his] feet and she said [his] pulse [was] mighty weak."  (Doc. 34-4, Exhibit 4, Marlowe Depo. 13:14-15).  Dr. Cumagun noted the physical condition of Veteran Marlowe's feet as having "erythematous [reddish scaly patches] skin lesions." (Doc. 34-5, Exhibit 5, Cumagun Depo 65: 10-13, 68:6-9). Dr. Cumagun ordered Veteran Marlowe's left foot be photographed – noted the condition of the right foot was worse – and forwarded the photographs of the left foot to a teledermatologist for a consult.  (Doc. 34-5, Exhibit 5, Cumagun Depo. 65: 10-23, 66:1-6, 38:22-23, 39:1-4).  Dr. Cumagun diagnosed Veteran Marlowe with fungal or eczematous dermatitis but requested a teledermatologist consult because "two heads are better than one."  (Doc. 34-5, Exhibit 5, Cumagun Depo. 39:6-9, 40:18-23, 41:1).

Despite her difficulty in locating a pedal pulse, and despite Veteran Marlowe's history with diabetes, Dr. Cumagun did not send Veteran Marlowe for a vascular work up, order a doppler, or further explore any possible vascular issues.

(Doc. 34-5, Exhibit 5, Cumagun Depo. 97:3-6). Though Dr. Cumagun acknowledges that a diminished pedal pulse could be a sign of vascular disease otherwise known as decreased circulation, and decreased circulation can lead to death of the extremity, Dr. Cumagun did not order any tests or consult on these issues. (Doc. 34-5, Exhibit 5, Cumagun Depo. 101:7-23, 102:1-23).

Veteran Marlowe's feet never healed from the lesions he presented to Dr. Cumagun with. (Doc. 34-4, Exhibit 4, Marlowe Depo. 67:2-4).  As the condition worsened between March 14, 2014 and July 2014, Veteran Marlowe continued to seek treatment from other providers – not similarly situated to Dr. Cumagun. (Doc. 30-9, 30-10, 30-11, 30-13, 30-14, 30-16, 30-17, documents filed under seal by Defendants).  By August of 2014, less than five months after Veteran Marlowe first complained of the condition of his feet, Veteran Marlowe lost both his legs above the knee to amputation.  (Doc. 30-1, p14 ¶58-60, undisputed facts).

**B.**      **Dr. Cumagun did not follow the standard of care for the treatment of a diabetic foot when examining Veteran Marlowe.**

Dr. Cumagun owed Veteran Marlowe a duty to treat him with "such reasonable care, skill, and diligence *as other similarly situated health care providers in the same general line of practice*, ordinarily have and exercise in like cases." ALA. CODE § 6-5-542(2) (emphasis added). Plaintiffs have presented expert testimony that the standard of care required Dr. Cumagun to send Veteran Marlowe for a vascular work up or otherwise explore vascular issues on his March

14, 2014 visit when she noted a diminished pedal pulse and skin lesions on his diabetic feet.  Because Plaintiffs' expert testified to the standard of care, Plaintiffs have presented sufficient evidence to establish a genuine issue of material fact with regard to the standard of care and Defendant is not entitled to judgement as a matter of law.

The AMLA specifically states "[a] health care provider may testify as an expert witness in any action for injury or damages against another health care provider based on a breach of the standard of care *only* if he or she is a 'similarly situated health care provider.'" ALA. CODE § 6-5-548(e) (emphasis added).

> [I]f the health care provider whose breach of the standard of care is claimed to have created the cause of action is certified by an appropriate American board as a specialist, is trained and experienced in a medical specialty, and holds himself or herself out as a specialist, a "similarly situated health care provider" is one who meets ***all*** of the following requirements:
> (1) Is licensed by the appropriate regulatory board or agency of this or some other state.
> (2) Is trained and experienced in the same specialty.
> (3) Is certified by an appropriate American board in the same specialty.
> (4) Has practiced in this specialty during the year preceding the date that the alleged breach of the standard of care occurred.

Ala. Code § 6-5-548(c). The Alabama legislature specifically intended experts to be "certified by the same American board in the same specialty" as the health care provider that allegedly breached the standard of care in order to speak to the standard of care. Ala. Code § 6-5-548(e).

i.   **The testimony of Dr. Taylor, a vascular surgeon, is not admissible as evidence of the standard of care for an internist.**

Dr. Taylor, Veteran Marlowe's vascular surgeon, is not qualified to speak to the standard of care Dr. Cumagun should have followed on the March 14, 2014 visit with Veteran Marlowe.  Dr. Cumagun is an internist, board certified in internal medicine.  (Cumagun Depo 14:2-14, 16:21-23, 17:1-3). Under the ALMA, only another board certified internist can speak to the standard of care that Dr. Cumagun should have applied on March 14, 2014. Ala. Code. § 6-5-548(e). Dr. Taylor is board certified by the American Board of Surgery.  (Doc. 30-19, Taylor Depo. 37:17-20, previously filed by Defendant).  Dr. Taylor is a vascular surgeon. (Doc. 30-19, Taylor Depo. 19:24-25, 20:1-2, previously filed by Defendant). Under the clear requirements of the ALMA, because Dr. Taylor and Dr. Cumagun are not board certified by the same American Boards, are not trained and experienced in the same specialty, and have not practiced in the same specialty, Dr. Taylor cannot testify as to the appropriate standard of care for Dr. Cumagun.

ii.  **Plaintiffs have presented sufficient evidence from a similarly situated healthcare provider to create a genuine dispute of fact as to the standard of care.**

Dr. Jerry McLane, Plaintiffs' retained expert, testified at length about the standard of care that Dr. Cumagun should have followed in her examination of Veteran Marlowe.  Like Dr. Cumagun, Dr. McLane is a board certified internist. (Doc. 30-20, McLane Depo. 6:7-22, 135:3-4, previously filed by Defendant).  In

his deposition, under oath, Dr. McLane testified regarding the standard of care

numerous times, including in all of the following statements:

> Q. What opinions do you have with respect to whether Dr.
> Cumagun breached the standard of care in this case?
>
> A. I think she definitely breached the standard of care by not
> getting Doppler testing on the peripheral arteries of both feet of
> this person.

(Doc 30-20, McLane Depo. 21:2-7, previously filed by Defendant).

> Q. That effectively Dr. Cumagun breached the standard of care by
> not obtaining a Doppler study or referring Mr. Marlowe to a
> vascular surgeon. Is that fair?
>
> A. That's correct

(Doc. 30-20, McLane Depo. 26:17-21, previously filed by Defendant).

> Q. Did you write, "The standard of care was to refer the patient to
> a vascular specialist"?
>
> A. Absolutely. Absolutely. Or do – or do an arterial Doppler.

 (Doc. 30-20, McLane Depo. 36:14-17, previously filed by Defendant).

> Q. And it's your opinion the standard of care required her to at
> least refer him for a Doppler study at that point.
>
> A. Right. Or vascular surgery.

(Doc. 30-20, McLane Depo 48: 14-17, previously filed by Defendant).

> Q. And it's your opinion that Dr. Cumagun did not follow the
> standard or care on March 14th of 2014?
>
> A. It is.

> Q. And I believe you specifically opined the standard of care was to refer the patient to a vascular specialist or at least send the patient for an arterial Doppler after it was determined that he had decreased but not absent pedal pulse in both feet and his feet looked as they did in the photographs.
>
> A. Yes. . . .

(Doc. 30-20, McLane Depo. 72: 21-25, 73: 1-5, previously filed by

Defendant).

> Q. . . . And is it your opinion that the standard of care requires referral to a vascular specialist or for a Doppler study before claudication occurs?
>
> A. If you feel diminished pulses, absolutely.

(Doc. 30-20, McLane Depo, 77: 13-17, previously filed by Defendant). Because

the Court must draw all reasonable inferences, including credibility, in favor of the

Plaintiffs, the Court must consider Dr. McLane's testimony as evidence that Dr.

Cumagun failed to follow the appropriate standard of care when examining

Veteran Marlowe's foot.

### iii. <u>Veteran Marlowe's treatment by other physicians subsequent to Dr. Cumagun does not overcome Dr. McLane's expert testimony.</u>

Defendant seeks to ignore Dr. McLane's continued assertions that Dr.

Cumagun failed to follow the standard of care simply because other physicians

also possibly failed to follow the standard of care.  (Doc 30-1, 22-23).  This

argument is nothing more than a red herring, and a true example of the

philosophical norm "Two wrongs don't make a right".  First, no subsequent

treating physician is similarly situated to Dr. Cumagun in certifications, specialties, and practice, disqualifying them from speaking to the standard of care Dr. Cumagun should have applied to Veteran Marlowe. Second, even if this Court determines the conduct of other similarly situated physicians is evidence of the standard of care, Dr. McLane's testimony creates a triable issue – a genuine issue of material fact – with regard to the standard of care to be applied to Dr. Cumagun.

Because the Court must apply all inferences – even with regard to credibility – in favor of the Plaintiffs, cases of competing expert testimony are not appropriate for summary judgment. See Fed. R. Civ. P. 56(a); In re Leopard, No. 2:13-CV-02251-RDP, 2014 WL 2740320, *1, *4 (N.D. Ala. June 17, 2014) (stating that competing expert reports create genuine issues of material fact and should not be decided on summary judgment but should be decided by the fact finder). In this case, assuming Defendant can establish that subsequent treatment creates an admissible expert opinion, Plaintiffs' expert has given competing testimony about the standard of care. Accordingly, the Court must deny Defendant's summary judgment motion with regard to standard of care.

C.     **Dr. Cumagun's failure to adhere to the standard of care for the treatment of a diabetic foot when treating Veteran Marlowe probably caused Veteran Marlowe to suffer the amputation of both of his legs.**

Plaintiffs have submitted substantial evidence to establish that Dr. Cumagun probably caused Veteran Marlowe to suffer a double leg amputation by failing to

follow the standard of care at his March 14, 2014 visit.  In addition to showing that a healthcare provider failed to follow the appropriate standard of care, the ALMA requires a plaintiff to establish a proximate causal connection between the failure to follow the standard of care and the injury.  Bradford v. McGee, 534 So.2d 1076, 1079 (Ala. 1988), Ala. Code § 6-5-484.

Under Alabama law, the issue of causation in medical malpractice cases "may properly be submitted to the [trier of fact] where there is evidence that prompt diagnosis and treatment would have placed the patient in a better position than [he] was in as a result of inferior medical care." Parker v. Collins, 605 So. 2d 824, 827 (Ala. 1992); Waddell v. Jordan, 302 So. 2d 74 (Ala. 1974); Murdoch v. Thomas, 404 So. 2d 580 (Ala. 1981). It is not necessary for Plaintiffs "to establish that prompt care could have prevented the injury." Parker, 605 So. 2d at 827 (citing John D. Hodson, Annotation, *Medical malpractice: "loss of chance" causality*, 54 A.L.R. 4th 10, § 3 (1987)); Waddell, 302 So. 2d at 77. Plaintiffs merely "must produce evidence to show that [the] condition was adversely affected by the alleged negligence." Id.

Under Alabama law in medical malpractice cases, "an expert qualified to testify on the standard of care and its breach is usually qualified to testify on causation." Adams v. Hooper, No. 7:12-cv-1942-LSC, 2013 WL 5777032, *1, *5 (N.D. Ala. Oct. 25, 2013) (citing Boyles v. Dougherty, 143 So. 3d 682, 686 (Ala. 2014) (allowing a nurse to testify about causation in a case involving another

nurse)). Dr. Cumagun herself acknowledged that diminished blood flow could

cause dermatologic issues and death to an extremity and that diabetic patients –

like Veteran Marlowe are at a higher risk of vascular problems.  (Doc. 34-5,

Exhibit 5, Cumagun Depo. 30:13-23. 102:18-22).  Dr. McLane testified that Dr.

Cumagun did not diagnose Veteran Marlowe's embolism, and that early diagnosis

would have put him in a better position to attempt revascularization.  (Doc 34-3,

Exhibit 3, McLane Expert Report). Specifically, "with early revascularization,

[Veteran Marlowe] would not have lost his legs.  (Doc 34-3, Exhibit 3, McLane

Expert Report). In further questioning Dr. McLane continued to speak to causation:

> Q. If Dr. Cumagun had referred Mr. Marlowe to a vascular specialist or surgeon in March of 2014, what do you think would have happened?
>
> A. Well, I think if they had referred him to a vascular surgeon in March . . . had he had a blockage in his femoral artery that could have been opened with an angioplasty or if he had a vascular study that showed other issues with his popliteal artery, then at that point he could have been referred to noninvasive revascularization, if indicated.
>
> . . .
>
> Q. . . . you can't also give an opinion here today that it more likely than not would have saved his limbs.
>
> A. Well, if he had a – if he had a major femoral artery or iliac artery, then I think a hundred percent it would have saved his limb.
> . . .

(Doc. 30-20, McLane Depo. 79:23-25, 80:1-25, 81:1-25, 82:1-10, previously filed

by Defendant).

> Q. I want to step back to March of 2014. Is it your opinion that Mr.
> Marlowe's legs could have been saved if the standard of care had
> been met?
>
> A. I think it's – my opinion is that – that it is – would have been
> his best opportunity to save his legs if something had been done to
> see if there was an arterial problem that was amenable to a
> procedure that would have restored blood flow to his legs.
>
> Q. Can you say that more likely than not his legs would have been
> saved had the standard of care been followed in March of 2014?
>
> A. In my opinion, it would have.

(Doc. 30-20, McLane Depo. 86:6-17, previously filed by Defendant).

> Q. So are you suggesting that he lost a chance to save those limbs
> because Dr. Cumagun didn't catch it early enough or didn't
> notice[?]
>
> A. I'm saying that is right.

(McLane Depo 106:5-8).

In addition to Dr. McLane's causation testimony, Dr. Taylor, the vascular

surgeon who amputated Veteran Marlowe's legs, testified that the cause of Veteran

Marlowe's double leg amputation was a "chronic ongoing embolization to both

lower extremities which resulted in tissue loss and critical limb ischemia in both

legs." (Doc. 30-19, Taylor Depo. 5:17-20, previously filed by Defendant).  Dr.

Taylor testified that the symptoms of the embolism were present on March 14,

2014 and Veteran Marlowe likely suffered from embolization at that time.  (Doc.

30-19, Taylor Depo. 8:8-11, 67:12-17, previously filed by Defendant).  Dr. Taylor further testified that Veteran Marlowe's feet, as they appeared in March of 2014, probably could have been salvaged because when reviewing photographs "from the look of it, it looks salvageable."  (Doc. 30-19, Taylor Depo. 21:9-10, previously filed by Defendant).

Plaintiffs have submitted testimonial evidence from two experts indicating causation.  Because the Court must view all evidence and inferences in the light most favorable to Plaintiffs, the Court must view the evidence as establishing that Plaintiffs have meet the causation standard under the ALMA.  Accordingly, the Court must deny Defendant's motion for summary judgment.

## VII.    CONCLUSION

Defendant has failed to establish that there are no genuine issue of material fact and that it is entitled to judgement as a matter of law.  Plaintiffs have submitted evidence supporting each element they must prove under the ALMA. Plaintiffs' expert testimony, when viewed in the light most favorable to Plaintiffs, require this Court to deny Defendant's motion for summary judgment and proceed to a trial on the merits.

Respectfully submitted, this 28 day of December, 2018.

/s/ Steven D. Tipler
Attorney for Plaintiffs

Of Counsel:
Tipler Law Offices
104 23rd Street South, Suite 100
Birmingham, AL 35233
Tel.: (205) 328-6800
Fax: (205) 328-6805
E-mail: steventipler@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Jason R. Cheek
Assistant U.S. Attorney
U.S. Attorney's Office
1801 Fourth Avenue North
Birmingham, Alabama 35203
Tel.: (205) 244-2104
Fax: (205) 244-2181
jason.cheek@usdoj.gov

/s/ Steven D. Tipler
Steven D. Tipler
Attorney for Plaintiffs